IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Edwin Melendez-Ramos,

    Plaintiff,

        v.

Eng. Jack T. Allison, et al.,

    Defendants.

**Civil No. 04-1123 (GAG)**

**OPINION AND ORDER**

This is an action for political discrimination. Plaintiff commenced it after Defendants failed to hire him as an agronomist for the Puerto Rico Highway and Transportation Authority ("PRHTA") allegedly because Plaintiff is an activist of the New Progressive Party ("NPP"). The matter is before the court on Defendants' motion for summary judgment. In this motion, Defendants argue that Plaintiff's complaint should be dismissed as to some or all of the Defendants because: (1) Plaintiff has failed to establish a *prima facie* case of political discrimination; (2) the individual Defendants were not personally involved in the alleged wrongs as required by Section 1983; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff has not shown that the failure to hire him severely compromised his political affiliation, as required by the severity of the harm test. After reviewing the pleadings and pertinent law, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' summary judgment motion (Docket No. 35).

**I.     Relevant Factual and Procedural Background**

The following undisputed material facts emerge from the parties' statements of facts, credited only to the extent either admitted or properly supported by record citations in accordance with Local Rule 56 and viewed in the light most favorable to Plaintiff. Plaintiff is an NPP activist. See Exhibit 6, Docket No. 37 at lines 14-15. He began working for the PRHTA in February of 1996 as an Agronomist/Consultant under a one-year contract. See Statement of Uncontested Facts ("SUF"), Docket No. 37 at ¶¶ 1, 5. He continued working at the PRHTA until June 30, 2004. Id. at ¶ 6. This suit revolves around events that took place during Plaintiff's last year at PRHTA.

On November 4, 2003, the PRHTA posted an announcement for an agronomist position. See Exhibit 38, Docket No. 37. Plaintiff applied for said position. See SUF, Docket No. 37 at ¶ 10. The Transaction Office of Human Resources at the PRHTA ("Transaction Office") evaluated the applications for the agronomist position and prepared a Registry of Eligible Candidates. See Exhibit 9, Docket No. 37 at ¶ 9. From the Registry of Eligible Candidates, the Transaction Office ranked the top 10 candidates, which formed the Certificate on Eligible Candidates. Id. at ¶ 10. The ranking was based on the applicants' academic preparation and work experience. See Exhibit 10, Docket No. 37. Plaintiff ranked number one in the Certificate of Eligible Candidates. Id.

Nancy Vazquez ("Vazquez"), Coordinator of Works and Highway Operations, and Eng. David Soto ("Soto"), Director of the Engineering and Conservation Office, interviewed Plaintiff for the agronomist position. See Plaintiff's Answer to Interrogatories, Docket No. 48 at ¶ 11h. The interview lasted three to five minutes. Id. Vazquez is an activist of the Popular Democratic Party ("PDP"). Id. at 11b. During the interview, Vazquez and Soto did not ask Plaintiff any questions. Id. at 11h. Some time later, Sonia Velez ("Velez"), Programs Director of Human Resources for the PRHTA, informed Plaintiff that he had not been selected for the position of agronomist. See Exhibit 30, Docket No. 37. Velez is also a PDP activist. See Velez' deposition, Docket No. 48 at pp. 8-9. Instead, PRHTA hired Jose Marquez Ruiz ("Marquez") for the agronomist position. See SUF, Docket No. 37 at ¶ 14. Marquez is another PDP activist. See Marquez' deposition, Docket No. 48 at pp. 20-21.

On February 17, 2004, Plaintiff filed this civil action seeking compensatory and pecuniary damages, declaratory judgment, preliminary and permanent injunctive relief pursuant to 42 U.S.C. § 1983. See Docket No. 1. As part of the complaint, Plaintiff alleged deprivation of rights protected by the First and Fourteenth Amendments of the United States Constitution due to political discrimination. Id. Plaintiff also asserted supplemental law claims under Puerto Rico Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29 § 146 et seq. and Article 1802 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. § 5141. Id. On February 13, 2006, the court entered a partial judgment dismissing Plaintiff's claim under the Due Process Clause. See Docket No. 23.

**Civil No. 04-1123 (GAG)**                                                3

The court has before it a motion for summary judgment filed by Defendants on February 15, 2007. See Docket Nos. 35-37. Plaintiff opposed this motion on April 16, 2007. See Docket No. 45. On May 9, 2007, Defendants replied to Plaintiff's opposition. See Docket Nos. 52, 53. Plaintiff filed a sur-reply on May 29, 2007. See Docket No. 57.

**II.     Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The moving party has the burden of establishing the nonexistence of a genuine issue of material fact. Celotex, 477 U.S. at 325. This burden has two components: (1) an initial burden of production that shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion that always remains on the moving party. Id. at 331. The moving party may discharge its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." Id.

After the moving party makes this initial showing, the "burden shifts to the nonmoving party with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-25). To meet this burden, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court must view the record and all reasonable inferences in the light most favorable to the nonmoving party. Id. If the court finds that some genuine factual issues remain, the court must deny the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 284 (1986).

**Civil No. 04-1123 (GAG)**                    4

### III.    Legal Analysis

Defendants have moved for summary judgment on the grounds that: (1) Plaintiff has failed to establish a *prima facie* case of political discrimination; (2) the individual Defendants were not personally involved in the alleged wrongs as required by Section 1983; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff has failed to show that the failure to hire him severely compromised his political affiliation, as required by the severity of the harm test. Below, the court examines these arguments to determine whether Defendants have established that there is no genuine issue of material fact and that they are entitled to a judgment as a matter of law.

A. Political Discrimination

The First Amendment protects non-policymaking employees from adverse employment actions based on their political affiliation or opinion. Gonzales-Pina v. Rodriguez, 407 F.3d 425, 431 (1st Cir. 2005) (citing Rutan v. Republican Party of Ill., 497 U.S. 62, 74-76 (1990); Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 51-52 (1st Cir. 2005)). To establish a *prima facie* case of political discrimination, "plaintiff must show that party affiliation was a substantial or motivating factor behind a challenged employment action." Mercado-Alicea, 396 F.3d at 51. A plaintiff cannot make out a *prima facie* case if there is no evidence that an actor was even aware of plaintiff's political affiliation. See Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 26 (1st Cir. 2006); Gonzalez-de-Blasini v. Family Dep't, 377 F.3d 81, 85-86 (1st Cir. 2004). To demonstrate politically-based discriminatory animus, plaintiff may use direct or circumstantial evidence. Angulo-Alvarez v. Aponte de la Torre, 170 F.3d 246, 249 (1st Cir. 1999) (citing Rodriguez-Rios v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998)).

Once plaintiff establishes a *prima facie* case of political discrimination, the burden shifts to defendants to demonstrate that (i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 286-87 (1977). After defendants have put forth a nondiscriminatory justification for the challenged action, "the plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly." Padilla-Garcia v. Jose Guillermo Rodriguez, 212 F.3d 69, 77 (1st Cir. 2000).

**Civil No. 04-1123 (GAG)**                    5

To establish a *prima facie* case of political discrimination, Plaintiff alleged the following facts:

- Plaintiff is an NPP activist. See Exhibit 6, Docket No. 37 at lines 14-15.
- Defendants knew that Plaintiff was an NPP activist because *inter alia*: (1) Plaintiff told Vazquez, a PRHTA coordinator, that he belonged to the NPP; (2) Plaintiff was part of the NPP employee group at PRHTA; (3) Plaintiff worked as an electoral college officer; (4) Plaintiff had NPP bumper stickers; (5) Plaintiff sold tickets to NPP events; and (6) Plaintiff attended campaign closings for the NPP. See Plaintiff's deposition of March 29, 2006, Docket No. 48 at pp. 35, 37; Exhibit 6, Docket No. 37 at lines 22-25; Exhibit 7, Docket No. 37 at lines 5-8.
- Vazquez was a PDP activist. See Plaintiff's Answer to Interrogatories, Docket No. 48 at ¶ 11b.
- Vazquez told Higinio Calderon Rivera ("Calderon") that she was under political pressure to select someone besides Plaintiff for the agronomist position. See Calderon's deposition, Docket No. 48 at pp. 2-3.
- Plaintiff was ranked number one among the top 10 candidates applying for the agronomist position. See Exhibit 10, Docket No. 37.
- Vazquez was one of two people who interviewed Plaintiff for the agronomist position. See Plaintiff's Answer to Interrogatories, Docket No. 48 at ¶ 11h.
- Velez, a PRHTA Programs Director of Human Resources and PDP activist, informed Plaintiff he had not been selected for the position. See Exhibit 30, Docket No. 37; Velez' deposition, Docket No. 48 at pp. 8-9.
- PRHTA hired Marquez, a PDP activist, for the position. See SUF, Docket No. 37 at ¶ 14; Marquez' deposition, Docket No. 48 at pp. 20-21.  I
- In the Certificate of Eligible Candidates for the agronomist position, Marquez ranked below Plaintiff. See Exhibit 10, Docket No. 37. This ranking was based on the applicants' academic preparation and work experience. Id.
- When PRHTA hired Marquez, he did not have the commercial license to supervise and

perform the herbicide application brigade on the Toa Baja District. See Plaintiff's Answer to Interrogatories, Docket No. 48 at ¶ 11v.

- Engineer Felipe Luyanda ("Luyanda"), PRHTA's Assistant Executive Director, told Ferdinand Cedeño ("Cedeño") that Plaintiff was not chosen for the agronomist position because of his affiliation with the NPP. See Cedeño's deposition, Docket No. 48, pp. 12-13.

Taken together, these facts permit a reasonable jury to conclude that "party affiliation was a substantial or motivating factor behind" behind PRHTA's decision not hire him as an agronomist. Mercado-Alicea, 396 F.3d at 51. Accordingly, the court holds that Plaintiff has made a *prima facie* case of political discrimination. This shifts the burden to Defendants to articulate a nondiscriminatory reason for not hiring Plaintiff. To meet this burden, Defendants allege that Marquez' selection for the agronomist position complied with the PRHTA Rules and Regulations. This conclusory allegation is not sufficient to rebut Plaintiff's *prima facie* case. Because Defendants have not proffered a nondiscriminatory reason for not hiring Plaintiff, the court finds that Plaintiff has a viable political discrimination claim.

B. Section 1983

Plaintiff brought this civil rights action pursuant to 42 U.S.C. § 1983. See Docket No.1. To state a Section 1983 claim, a plaintiff "must allege facts sufficient to support a determination (i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States." Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005) (quoting Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir. 1996)). As an additional corollary, only those individuals who participated in the conduct that deprived plaintiff of his rights can be held liable. See Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91-92 (1st Cir. 1994).

The First Circuit has emphasized that "supervisors may only be found liable on the basis of their own acts or omissions." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989). Thus, it has held that in order for a supervisor to be found liable under Section 1983, a plaintiff must show: (1) that the supervisor's own acts or omissions deprived plaintiff of a constitutionally protected right; (2) that his "conduct or inaction amounted to a reckless or callous indifference to

**Civil No. 04-1123 (GAG)**                                              7

the constitutional rights of others;" and (3) that there was "an 'affirmative link' between the street level misconduct and the action or inaction of supervisory officials." Id. at 563. Notice is a salient consideration in determining the existence of supervisory officials. See Febus-Rodriguez, 14 F.3d at 93. Nonetheless, supervisory liability does not require a showing that the supervisor had actual knowledge of the offending behavior. A supervisor can "be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness." Maldonado-Denies v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994).

Defendants maintain that Plaintiff cannot state a Section 1983 claim against the individual Defendants in this case because they did not participate in the conduct that allegedly deprived Plaintiff of his rights. Below, the court examine the individual Defendants' involvement in the alleged wrongful conduct.

### 1. Nancy Vazquez and David Soto

Plaintiff alleges that Defendants violated his First Amendment constitutional right when they failed to hire him for the agronomist position at PRHTA due to his political affiliation with the NPP. It is undisputed that Vazquez and Soto interviewed Plaintiff for the agronomist position. See Plaintiff's Answer to Interrogatories, Docket No. 48 at ¶ 11h. Thereafter, Vazquez sent a letter to David Aviles Gonzalez ("Aviles"), PRHTA's Human Resources Director, stating that "After carrying out the interviews ... we have selected Mr. Jose R. Marquz [sic] Ruiz." See Exhibit 14, Docket No. 37. Given this direct personal involvement in the hiring process, the court finds that a reasonable jury could conclude that Vazquez and Soto decided not to hire Plaintiff or had input in that decision. Because Plaintiff has raised an issue of material fact to the effect that Vazquez and Soto were sufficiently involved in the decision not to hire him, the court holds that Plaintiff has a valid Section 1983 claim against Vazquez and Soto.

### 2. Jack T. Allison

Engineer Jack T. Allison ("Allison") worked as PRHTA's Executive Director at all times relevant to this suit. Plaintiff maintains that Allison can be held liable under Section 1983 because Allison, as the nominating authority, had the prerogative to determine the candidate to fill the agronomist position and because Plaintiff sent a letter to Allison requesting that Allison stop the

recruitment process and explain PRHTA's decision. See Exhibit 9, Docket No. 37 at ¶ 13; Plaintiff's Answer to Interrogatories, Docket No. 48 at ¶ 11m. The court disagrees. Allison may have had the prerogative to determine the candidate to fill the agronomist position, but Plaintiff has not alleged that he exercised that prerogative to hire Marquez over Plaintiff. As for the letter, the court notes that Plaintiff has not introduced it as part of the summary judgment record. Cf. Rodriguez-Garcia v. Municipality of Caguas, ___ F.3d ___, 2007 WL 2178426 (1st Cir. 2007) (Plaintiff presented letters alleging political discrimination directed to mayor.). This record is now closed. Accepting Plaintiff's description of what the letter states, the court finds that Allison's lack of response to Plaintiff's letter does not show that he acted with deliberate indifference. "Deliberate indifference will be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." Bisbal-Ramos v. City of Mayaguez, 467 F.3d 16, 24 (1st Cir. 2006) (quoting Hegart v. Somerset County, 53 F.3d 1367, 1379-80 (1st Cir. 1995)). Plaintiff's letter to Allison did not allege political discrimination. And, if it did, Plaintiff does not so state. Thus, Allison had no notice that Plaintiff's constitutional rights were allegedly being violated. Because Plaintiff has not alleged that Allison was sufficiently involved in the decision not to hire Plaintiff, the court holds that Plaintiff does not have a viable Section 1983 claim against Allison.

### 3. Felipe Luyanda

Luyanda worked as PRHTA's Assistant Executive Director at all relevant times to this suit. Plaintiff contends that Luyanda can be held liable under Section 1983 because Luyanda told Cedeño that Plaintiff was not chosen for the agronomist position because of his affiliation with the NPP. See Cedeño's deposition, Docket No. 48, pp. 12-13. "An important factor in determining whether a supervisor is liable to the extent that he has encouraged, condoned, acquiesced, or been deliberately indifferent to the behavior of a subordinate, is whether the official was put on notice of behavior which was likely to result in the violation of the constitutional rights of citizens." Febus-Rodriguez, 14 F.3d at 93 (citing Lipsett v. University of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988)). Because Luyanda's comment to Cedeño shows that Luyanda had notice of the alleged constitutional violation Plaintiff endured, the court concludes that a reasonable jury could find Luyanda liable

because he failed to do something to make the violation stop. Thus, the court holds that Plaintiff has a viable Section 1983 claims against Luyanda.

### 4. David Aviles

Aviles worked as PRHTA's Human Resources Director at all relevant times to this suit. Plaintiff alleges that Aviles can be held liable under Section 1983 because he was in charge of supervising the hiring process as the Human Resources Director for PRHTA.[1] This general conclusory allegation is insufficient to impose Section 1983 liability on Aviles. Plaintiff has not mentioned any specific act or omission committed by Aviles. Likewise, Plaintiff has not shown that Aviles was on notice that Plaintiff's constitutional rights were allegedly being violated and that Aviles acted with deliberate indifference. Because Plaintiff has not alleged that Aviles was sufficiently involved in the decision not to hire Plaintiff, the court holds that Plaintiff does not have a valid Section 1983 claim against Aviles.

### 5. Sonia Velez

Velez worked as PRHTA's Programs Director of Human Resources at all relevant times relevant to this suit. Plaintiff maintains that Velez can be held liable under Section 1983 because she was in charge of the office responsible for publishing the announcement for the agronomist position and selecting the candidates qualified for the interviews and because she signed a letter informing Plaintiff that he had not been selected for the position. See Velez' deposition, Docket No. 48 at p. 14; Plaintiff's deposition of March 29, 2006, Docket No. 48 at p. 60; Exhibit 30, Docket No. 37. The court disagrees. With respect to the announcement for the agronomist position, the court notes that Plaintiff has not alleged that Velez was personally involved in the process of publishing it or that the publication deprived him of his constitutional rights. Likewise, Plaintiff does not claim that Velez was personally involved in the selection of candidates qualified for the interviews or that

---

[1] In his Statement of Material Facts ("SMF"), Plaintiff mentions other duties Aviles allegedly conducted as PRHTA's Human Resources Director. See SMF, Docket No. 45, at ¶¶ 27-30. In support thereof, Plaintiff cites to his deposition of March 29, 2006. The cited material does not factually support Plaintiff's contentions, either because the cited pages are missing or because the cited material does not establish what Plaintiff claims. The court will not consider these unsubstantiated allegations.

**Civil No. 04-1123 (GAG)**              10

the selection deprived him of his constitutional rights. Given that Plaintiff does not contend that Velez decided not to hire him, the real issue here is whether Velez acted with deliberate indifference when she signed the letter notifying Plaintiff that he had not been selected for the agronomist position.

"Deliberate indifference will be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." Bisbal-Ramos, 467 F.3d at 24 (quoting Hegart, 53 F.3d at 1379-80). Here, Plaintiff has not presented any admissible evidence from which a reasonable jury could conclude that Velez was aware that Plaintiff's constitutional rights were allegedly being violated. Thus, the court is unable to conclude that it would have been manifest to Velez that by signing the letter she would very likely violate Plaintiff's constitutional rights. Because Plaintiff has not shown that Velez was sufficiently involved in the decision not to hire Plaintiff, the court holds that Plaintiff does not have a valid Section 1983 claim against Velez.

C. Qualified Immunity

Defendants argue that even if Plaintiff has stated a valid claim under Section 1983, Defendants are shielded from liability for damages under the doctrine of qualified immunity. "Qualified immunity 'provides a safe harbor for public officials acting the color of state law who would otherwise be liable under 42 U.S.C. § 1983 for infringing the constitutional rights of private parties.'" Borges Colon v. Roman-Abreu, 438 F.3d 1, 18 (1st Cir. 2006) (quoting Whitfield v. Melendez-Rivera, 431 F.3d 1, 6 (1st Cir. 2005)). The First Circuit applies a three part test to determine whether a public official is entitled to qualified immunity, asking "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." Guillemard-Ginorio v. Contreras-Gomez, 490 F.3d 31, 38 (1st Cir. 2007) (quoting Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004)). If all three questions are answered in the affirmative, then qualified immunity is not available. Mihos, 358 F.3d at 110.

In this case, Plaintiff alleges that Defendants did not hire him as an agronomist for the PRHTA because he was an NPP activist. This allegation, if true, would establish a constitutional violation because the First Amendment protects non-policymaking employees from adverse employment actions based on their political affiliation or opinion. Gonzales-Pina, 407 F.3d at 431 (citing Rutan, 497 U.S. at 74-76; Mercado-Alicea, 396 F.3d at 51-52). This right to be free from political discrimination was clearly established when Defendants allegedly failed to hire Plaintiff in 2003. Finally, the court finds that a reasonable official would have understood that refusing to hire Plaintiff due to his political affiliation with the NPP would violate Plaintiff's constitutional right to be free from political discrimination. In light of the above, the court will not dismiss Plaintiff's complaint on the ground that Defendants are entitled to qualified immunity.

D. Severity of the Harm Test

Defendants maintain that Plaintiff's complaint should be dismissed because Plaintiff has failed to show that the failure to hire him severely compromised his political affiliation, as required by the severity of the harm test. The First Circuit developed the severity of the harm test in an effort to set out standards to evaluate what type of employer action short of dismissal would support a claim for violation of plaintiff's right of association. See Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1216 (1st Cir. 1989). The Agosto court found that "a cause of action for violation of the employee's free association right ... [is] stated only when the [employer's] actions are sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party." Id. at 1217.

In the instant case, Plaintiff has created a genuine issue of material fact as to whether Defendants failed to hire him as an agronomist for the PRHTA because he is an NPP activist. The court finds that this alleged wrongful conduct would cause a reasonably hardy individual to compromise his political beliefs. Id. Accordingly, the court will not dismiss Plaintiff's complaint on the ground that Plaintiff has failed the severity of the harm test.

**IV.    Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment (Docket No. 35) is hereby **GRANTED IN PART** and **DENIED IN PART**. Consequently, the case will proceed to trial

**Civil No. 04-1123 (GAG)** 12

against Defendants PRHTA, Nancy Vazquez, David Soto, and Felipe Luyanda.  Defendants Jack T. Allison, David Aviles, and Sonia Velez are dismissed as parties to this action.

**SO ORDERED**.

In San Juan, Puerto Rico this 27th day of August 2007.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge